UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00610-MOC-DSC

| | | |
|---|---|---|
| **INVUE SECURITY PRODUCTS INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **MOBILE TECH, INC.,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on the court's prior Order (#62) and the parties'
responsive briefs. In its previous Order, the court requested written argument as to: (1) whether
the pending related case of 3:17-cv-270 (the "270" case) between the same parties should be
consolidated into the instant lead case, pursuant to Rule 42; and (2) whether the instant matter
should be transferred to the District of Oregon. Having considered the briefs and the record in this
matter, the court enters the following Order.

## I.      BACKGROUND

Plaintiff ("Invue") has filed a number of related patent infringement suits against
defendant ("Mobile Tech") pertaining to programmable security systems and components
thereof. The parties have proceedings underway related to one or more of the patents at issue
before the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office. All actions
other than the pending 270 case have been stayed and consolidated with the instant lead case.
(#63) at 1.

At issue here is whether venue is proper in this district and/or whether the action should be transferred to another venue. In addition, there is an issue of whether to consolidate the 270 case with the instant action.

## II.  STANDARDS OF REVIEW

### A.  Supreme Court's Recent decision in *TC Heartland*

On May 22, 2017, the Supreme Court issued its decision in TC Heartland LLC v. Kraft Foods Group Brands LLC, 137 S. Ct. 1514 (2017). *Inter alia*, the decision reaffirmed a 1957 decision, Fourco Glass v. Transmirrra Products Corp., 353 U.S. 222 (1957), which found that a corporation "resides" for purpose of venue in a patent case in the state of its incorporation. Pursuant to Fourco, § 1400(b) is "the sole and exclusive provision controlling venue in patent infringement actions." 353 U.S. at 229.

There are two prongs of the § 1400(b) test for venue in a patent action: venue is proper either (1) where defendant resides or (2) where the defendant has committed acts of infringement and has a regular and established place of business. The TC Heartland Court found that §1400(b)'s first prong "definitively and unambiguously" refers only to the state of incorporation of a domestic corporation. 137 S. Ct. at 1520.

Here, there is no evidence that all parties have consented to a transfer of venue under §1404. There is also no evidence that the defendant, Mobile Tech, "resides" in the Western District of North Carolina. In fact, the defendant is incorporated in the State of Indiana. (#63) at 5. Nevertheless, venue in this District would be proper if the defendant has both committed acts of infringement and has a regular and established place of business here. A fixed physical presence in a district is not dispositive, and the guiding question is whether the corporate

defendant does it business through a permanent and continuous presence in the district. In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985).

**B. Transfer of Venue**

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Id. 28 U.S.C. § 1400(b), which specifically governs venue in patent actions, provides, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Id. A motion to transfer pursuant to § 1404(a) in a patent case requires application of the law of the regional circuit. In re Link_A_Media Devices Corp., 662 F.3d 1221, 1222-23 (Fed. Cir. 2011).

Upon a motion to transfer, the moving party carries a heavy burden. Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 451 (W.D.N.C. 1989). A court's decision to grant a motion to transfer venue under 28 U.S.C. § 1404(a) is largely discretionary. 3A Composites USA, Inc. v. United Indus., Inc., No. 5:13CV83-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014) (citing Landers v. Dawson Const. Plant Ltd., 201 F.3d 436, 1999 WL 991419, *2 (4th Cir. 1999)). In exercising such discretion, the court applies a balancing test and considers various factors in deciding whether transfer is appropriate. Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F.Supp. 93 (W.D.N.C. 1990). The factors to be considered include:

    1. The plaintiff's initial choice of forum;
    2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view by the jury;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

Id. "The above factors fall into three categories: (1) factors that favor neither party, (2) factors that favor Defendant, and (3) factors that favor Plaintiff." Cohen v. ZL Technologies, Inc., No. 3:14-CV-00377-FDW, 2015 WL 93732, at *2 (W.D.N.C. Jan. 7, 2015) (citing Crockett, 751 F. Supp. at 98). The court must analyze the eleven factors based on quality, not just quantity. Id. (citing Crockett, 751 F. Supp. at 96). In most cases, the plaintiff's choice of forum should be given significant weight, and should not be disturbed unless the balance is strongly in favor of transfer. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). A motion should not be granted if transfer "would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered." Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 95 (W.D.N.C. 1990).

On a motion to transfer, the facts as alleged in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Century Furniture, LLC v. C & C Imps., Inc., No. 1:07cv179, 2007 WL 2712955, at *2 (W.D.N.C. Sept. 14, 2007).

### C. Consolidation under Rule 42

Rule 42, Federal Rules of Civil Procedure, gives the court wide discretion to consolidate actions before it if the actions involve common questions of law or fact. The Fourth Circuit has indicated that the court's sound discretion should be guided by a number of critical questions, such as whether (1) whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues; (2) the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, (3) the length of time required to conclude multiple suits as against a single one, and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives. Arnold v. E. Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982), on reh'g, 712 F.2d 899 (4th Cir. 1983). Even so, the Circuit has warned that "[c]onsolidation, or refusal to sever, where prejudice results under the facts and circumstances of the particular case, amounts to abuse of discretion" and can constitute reversible error. Arnold v. E. Air Lines, Inc., 712 F.2d 899, 906 (4th Cir. 1983).

### III. DISCUSSION

The court is asked to make three determinations:

1) Whether venue is proper in the Western District of North Carolina;[1]

2) Notwithstanding the appropriateness of venue in this district, whether the action should be transferred to another judicial district in the interests of justice and for the convenience of the parties, pursuant to § 1404; and

---

[1] The plaintiff argues that defendant has waived any venue argument under Rule 12. See (#64) at 6-12. As noted below, the 270 action has a pending, timely Motion to Change Venue. Further, § 1404 enables the court, in the interest of justice, to transfer venue, even if the argument was waived.

3) Whether the 270 case should be consolidated with the instant action, pursuant to Rule 42(a).

The court will consider each question *seriatim*.

## A.      Venue in this District

Under § 1400(b), venue in a patent infringement action is appropriate in the state where (1) the defendant corporation is incorporated or (2) where acts of infringement occurred and where defendant has regular and established business. The plaintiff bears the burden of establishing proper venue. See Butler v. Ford Motor Co., 724 F. Supp. 2d 575, 586 (D.S.C. 2010).  It is undisputed that the defendant, Mobile Tech, does not reside in this district. Therefore, the operative inquiry is whether the defendant has committed acts of infringement and has a regular and established place of business in the Western District of North Carolina, sufficient to properly lay venue in this district under § 1400(b).

In the wake of TC Heartland, district courts around the Fourth Circuit have wrestled with venue questions in patent infringement actions. This court's colleague in South Carolina recently decided Hand Held Prod., Inc. v. Code Corp., No. CV 2:17-167-RMG, 2017 WL 3085859, (D.S.C. July 18, 2017), which bears similarities to the instant case at the bar. In Hand Held Products, plaintiff alleged that defendant had a "'regular and established place of business' in South Carolina because:

> "(1) [defendant] was founded in the Charleston area in 1997, (2) [defendant] regularly sells products in South Carolina, (3) [defendant] advertises that it has a regional area sales manager for South Carolina, (4) [defendant] has an employee resident in South Carolina, and (5) because '[plaintiff] anticipates that discovery will ultimately reveal that one of Code's distributors of the accused products in this case is located in Greenville, South Carolina.'"

2017 WL 3085859, at * 4. Defendant responded with sworn statements that claimed:

> (1) that it neither owns nor leases real property in South Carolina, (2) that it maintains no offices, facilities, or distribution centers in South Carolina, (3) that it is not licensed to do business in South Carolina, (4) that its sales representative for South Carolina is not resident in South Carolina, and (5) that it has only a single employee in South Carolina, who works from his home, who has no inventory stock, and who was only hired in December 2016.

Id. Ultimately, the court found that defendant did not have regular and established business in the state when the corporate defendant had only "single, recently hired employee who does not make sales or interact with customers in South Carolina and who maintains no inventory in South Carolina." Id. Further, the Hand Held Products court found that the fact that defendant was "not even licensed to do business in South Carolina is practically dispositive in determining" that it did not have regular and established business in that district. Id.

While Hand Held Products case is highly persuasive, an on-point decision of the Federal Circuit would bind this court. Prior to the establishment of the Federal Circuit in 1982, the Fourth Circuit took up the question of § 1400(b)'s requirement of a "regular and established place of business" in American Cyanamid Co. v. Nopco Chem. Co., 388 F.2d 818 (4th Cir. 1968). There, the Fourth Circuit found that a defendant had within the district "no real or personal property, no storage, distribution or manufacturing facilities, and no bank account, address, or telephone listing" and did not have any of its salespeople living in the district. Id. at 819. One sales manager did live in the district, operated out of a home office, and employed a part-time secretary. Id. Nothing outside the manager's home office suggested that the corporate defendant did work in the district. Id.

Here, the court is asked whether the instant case is similar to American Cyanamid and Hand Held Products. See (#63) at 9-10. In the instant case, the defendant is registered to do business in the State of North Carolina, which is inapposite to Hand Held Prodcts. See (#64-1) at 1. Similar to American Cyanamid, defendant does not have a fixed office location in the district and does not have any warehouse or storage facility therein. (#63) at 6. Defendant claims that it has six (6) part-time field technicians, who are paid hourly. (#63) at 8. According to defendant, these technicians do not solicit orders, enter into contracts, or make sales, but instead service existing accounts. (#63) at 8-10. Plaintiff notes that the solicitation for these jobs includes a requirement for a home office within the district. (#64-3) at 5. Plaintiff also notes that the technicians' tasks include on-site customer services related to Mobile Tech's allegedly infringing products, as well as on-site training and education, emergency call response 24/7, and an inventory of replacement parts and specialized tools. (#64) at 5.

In the instant case, the contacts between Mobile Tech and the district are more concrete, regular, and established than those of the corporate defendant in American Cyanamid. While both cases involve employees with home offices, the contacts in the instant case involve technicians who actively work on-site throughout the District. Unlike in American Cyanamid, the corporate defendant here actively manages and directs service calls to these field technicians. Similar to American Cyanamid, the defendant here had minimal real or personal property, no storage, distribution or manufacturing facilities, and no bank account or corporate address in the district.

The contacts between the six field technicians and the district are also more regular and established than those of the corporate defendant in Hand Held Products. There, there was an

allegation of one, recently-hired employee who did not interact with customers and the corporate defendant in that case was not registered to do business in the state. Here, there are six-part time field technicians who actively engage with customers in the district and the company is registered to do business in the state.

Defendant cites to a Massachusetts case, Johnston v. IVAC Corp., 681 F. Supp. 959, 964 (D. Mass. 1987) for the proposition that merely "doing business" in a district is insufficient to satisfy the "regular and established business" prong of § 1400(b). (#63) at 11. Johnston's holding undercuts defendant's venue argument. While the Johnston court found that having sales representatives in Massachusetts did not create appropriate venue there, it based its ruling in large part on the fact that those sales representatives "do not provide extensive technical support." Id. at 964. In contrast, the role of the six field technicians here is to provide on-site technical support, including installation and repair, as well as to provide educational outreach to existing customers.

In light of American Cyanamid and Hand Held Products, the court here finds that venue is appropriate in this district as defendant employs six field technicians who regularly service customers in this district who have purchased defendant's allegedly infringing product. Thus, the court concludes that venue is properly laid in this district.

### B.  Transferring Venue

Even if venue is appropriate in this district, the court may transfer the case to another appropriate district, pursuant to § 1404(a). Within this district, motions to transfer venue are analyzed using the eleven Crockett factors noted above. While the moving party bears a heavy

burden on a motion to transfer venue, <u>Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.</u>, 719 F.Supp. 446, 451 (W.D.N.C. 1989), a court's decision to grant a motion to transfer venue under 28 U.S.C. § 1404(a) is largely discretionary. <u>3A Composites USA, Inc. v. United Indus., Inc.</u>, No. 5:13CV83-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014).

## 1.    Initial Choice of Forum

The first <u>Crockett</u> factor is the plaintiff's initial choice of forum. In this case, the plaintiff initially chose the Western District of North Carolina to lay as its preferred forum. Although the choice of forum by the Plaintiff is ordinarily given considerable weight, that weight is diminished when the conduct giving rise to the complaint did not occur in the forum. <u>Hames v. Morton Salt, Inc.</u>, 3:11cv570-MOC-DSC, 2012 WL 1247201, at *2 (W.D.N.C. Apr. 13, 2012) (citing <u>Parham v. Weave Corp.</u>, 323 F.Supp.2d 670, 674 (M.D.N.C. 2004)). Indeed, the weight given to the plaintiff's choice of forum is proportionate to the relation between the forum and the cause of action. <u>Parham</u>, 323 F.Supp. 2d at 674.

Here, this factor is of marginal weight to keeping the action in this forum. While the plaintiff chose the Western District of North Carolina as its initial choice of forum, the weight afforded to that choice is substantially undermined as the allegedly infringing actions primarily occurred in the District of Oregon, where Mobile Tech has its primary research and development facilities. That said, at least some infringing acts took place here, including the installation of allegedly infringing devices and sale to customers who have locations in this district.

## 2.    The Residence of the Parties

Both parties to this action are corporate entities. Accordingly, under <u>TC Heartland</u> and <u>Fourco</u>, the residence of these corporate parties for venue purposes in this patent infringement

action is limited to the state of incorporation.

Here, the plaintiff is incorporated in Ohio and defendant is incorporated in Indiana. Accordingly, this factor is neutral here.

### 3. *The Relative Ease of Access of Proof*

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." <u>In re Genentech, Inc.</u>, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Here, defendant's corporate headquarters are in Oregon. The bulk of the design and development of the allegedly infringing products occurred there, as did most of the sales and marketing decisions. <u>See</u> (#63) at 3; <u>see</u> also <u>MGT Gaming, Inc. v. WMS Gaming, Inc.</u>, 978 F. Supp. 2d 647, 669 (S.D. Miss. 2013) ("Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters.")(citing <u>In re Acer Am. Corp.</u>, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Accordingly, this factor strongly favors transfer to the District of Oregon.

### 4. *The Availability and Costs for Witnesses*

Traditionally, "[t]he convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer … One strong argument against transfer is that the original forum will be the most convenient for the witnesses. And when transfer will better serve the convenience of the witnesses, the motion under Section 1404(a) is more likely to be granted." 15 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3851 (4th ed.) (collecting cases).

The court notes that the party asserting witness inconvenience has the burden to proffer sufficient details respecting the witnesses and their potential testimony to determine the materiality of evidence and the degree of inconvenience. Capital One Fin. Corp. v. Drive Fin. Servs., L.P., 434 F. Supp. 2d 367, 375-76 (E.D. Va. 2006).

Here, defendant has proffered an affidavit alleging: (1) a majority of its employees reside in Oregon, (2) most people involved with the development of defendant's products reside in Oregon, (3) defendant's only customer contact center is located in Oregon; and (4) it is likely that a majority of defendant's witnesses are located in Oregon. See (#63-1). Without the benefit of additional discovery,[2] the court has sufficient information to reason that the bulk of the development of the allegedly infringing product occurred in Oregon and the defendant's presence in the forum is minimal, consisting of six part-time technicians, as reviewed above.

In considering the convenience for non-party witnesses, the factor would likely favor transfer given that the bulk of witnesses to the development and sale of allegedly infringing products will likely be in or near Oregon. However, the court will treat this factor as neutral without further factual development.

5.      *View by the Jury, Enforceability of a Judgment, and Relative Advantages / Obstacles to Fair Trial*

Taking three Crockett factors together, the court evaluates whether transfer affords the possibility of a view by the jury; allows for the enforceability of a judgment, if obtained; and balances the relative advantages and obstacles to a fair trial. As to the first two of these three factors, it is clear that the District of Oregon, as a sister federal district court, can enforce

---

[2] The court notes that there is a pending Motion for Discovery as to Venue in the 270 case. See 3:17-cv-270, #16.

-12-

judgments and affords the parties the possibility of a jury trial, which would favor transfer on both factors.

As to any relative obstacles or advantages for a fair trial, it is not necessary to probe as to whether this district or that of Oregon would provide one side or the other any "home field" advantage, as any advantage would go both ways. See Rice v. Bellsouth Adver. & Pub. Corp., 240 F. Supp. 2d 526, 530 (W.D.N.C. 2002). The court therefore finds that this factor is neutral.

### 6.  *Practical Problems and Administrative Difficulty*

Examining two Crockett factors together, the court evaluates the administrative difficulties of court congestion and practical problems affecting trial expediency and expense.

As for court congestion, this factor is neutral. Neither the District of Oregon nor this District are currently facing a judicial emergency. See JUDICIAL EMERGENCIES, UNITED STATES COURTS, http://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies. Both districts are trial courts with sizeable case-loads. Accordingly, this factor is neutral.

With regard to practical problems, Crockett itself noted that motions to transfer are not to be granted merely to shift the inconvenience from one party to another. 751 F. Supp. at 95. With that noted, it is clear that either forum there will be practical problems such as travel and accommodations for the parties and their counsel. See Rice, 240 F. Sup.. 2d at 530. Both Charlotte and Portland are large cities with major airports and ample accommodations for out-of-town travelers. Therefore, the factor is neutral.

### 6.  *Interest in Localized Controversies Settled At Home and Avoidance of Conflict of Laws Issues*

The two remaining Crockett factors involves the localized adjudication of disputes and avoidance of issues with conflicts of laws. The instant action involves patent infringement. The

dispute is by definition not localized as it involves federal patent law. Indeed, the alleged infringing activities took place in this district, but also may have also occurred elsewhere where the product was designed, manufactured, or sold. Further, there is no concern for conflict of law issues given the uniformity of patent law's application across the federal courts.

### 7. *Conclusion*

Notwithstanding proper venue in the present district, the court has the discretion to transfer venue in the interest of justice. This discretion is guided by evaluation of certain factors outlined in Crockett. Applying the Crockett factors to the instant case, the court finds several that are neutral and only one that slightly favors adjudication in this district. A plurality favor transfer to a more appropriate venue, that of the District of Oregon, Portland Division. The court has also considered the factors qualitatively and the factors favoring transfer substantially outweigh the factor favoring retention. Based on both a quantitative and qualitative analysis, the case will be transferred.

### C.  Consolidating the 270 Case

Rule 42 provides a federal court with considerable discretion as to whether to consolidate an action with other pending cases. Rule 42(a) allows for consolidation when the court finds common questions of law or fact between currently pending actions.  In examining the factors provided by the Fourth Circuit in Arnold v. E. Air Lines, 681 F.2d at 193, the court finds that consolidation of the 270 case with the instant action is warranted.

Arnold's first factor asks whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues.

Here, two sophisticated businesses are engaged in a series of contentious patent battles involving similar patents. The actions involve the same parties and allegedly originate from the same family of patents. (#64) at 18. While the case presents a small risk of possible prejudice or confusion, it presents a substantial issue of whether the 270 case could result in inconsistent rules on the same or similar set of issues before the court.

Arnold's second inquiry evaluates the burden on parties, witnesses and available judicial resources posed by multiple lawsuits. The instant case has already consolidated other similar cases. The 270 case is the most recent action filed in the ongoing dispute between these parties. Other proceedings are pending before the U.S. Patent and Trademark Office's Patent Trial and Appeal Board. Many of the witnesses in the 270 case are likely to be the same as those in the instant action. (#64) at 18. Further, trying the actions together will save judicial resources and promote judicial efficiency.

Arnold's third and fourth factor include evaluations of the length of time required to try multiple suits and the relative expense of doing so. Related to the fourth factor, the relative expense of trying multiple actions will be far greater than one larger consolidated suit.

With regard to the third factor, the 270 case is not stayed, while this consolidated action is stayed pending one or more findings by the Patent Trial and Appeal Board. It may take longer to try the cases if the 270 case was to be consolidated with this stayed action. Indeed, the 270 case was filed during the pendency of the instant action, potentially to avoid the imposed stay on the adjudication of the related patents. Even so, the time required to try multiple related suits will be longer than that required by one consolidated suit concerning related patents.

Upon review of the <u>Arnold</u> factors, the court finds that common questions of law or fact govern both the instant case and the 270 case. Accordingly, the 270 action will be consolidated with the instant case. The newly consolidated action will be transferred to the District of Oregon.

## IV.    CONCLUSION

For the reasons stated herein, the court finds that further maintenance of this action is not appropriate in this district. Appropriately, it will transfer the action to the District of Oregon, Portland Division after first consolidating the 270 case into the instant action, pursuant to Rule 42(a).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1)  Case No. 3:17-cv-270 is **CONSOLIDATED** into the instant action, pursuant to Rule 42(a); and

2)  The instant action, consolidated with 3:17-cv-270, is **TRANSFERRED** to the District of Oregon, Portland Division.

The Clerk of Court is respectfully directed to place the proper notice of consolidation and transfer in the docket sheet for Case No. 3:17-cv-270.

Signed: August 21, 2017

Max O. Cogburn Jr.
United States District Judge